W. Zev Abramson, Esq. #289387
Nissim Levin, Esq. #306376
Christina Begakis, Esq. #316779
**ABRAMSON LABOR GROUP**
3580 Wilshire Blvd, Suite 1260
Los Angeles, California 90010
Tel:   (213) 493-6300
Fax:   (213) 382-4083

**Attorneys for Plaintiff,**
JORGE MADRIGAL

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

JORGE MADRIGAL, an individual,

        Plaintiff,

vs.

PERFORMANCE TRANSPORTATION, LLC, a limited liability company; and DOES 1-100,

        Defendants.

Case No.: 21-cv-00021-VKD

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL:**

1. Disability Discrimination
2. Failure to Accommodate
3. Failure to Engage in the Good Faith Interactive Process
4. Retaliation in Violation of the Fair Employment and Housing Act
5. Wrongful Termination in Violation of Public Policy

Over $25,000

PLAINTIFF complains and alleges as follows:

1.     On information and belief, Plaintiff, JORGE MADRIGAL, is a resident of the State of California.

2.     At all times herein mentioned, Defendant, PERFORMANCE TRANSPORTATION, LLC. was doing business in California at 5480 Monterey Road, Gilroy, CA 95020 and was the employer of Plaintiff from December 2016 through his wrongful termination on or about September 18, 2020.

3. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or associate, of those Defendants fictitiously sued as DOES 1 through 100 inclusive and so Plaintiff sues them by these fictitious names. Upon discovering the true names and capacities of these fictitiously named Defendants, Plaintiff will amend this complaint to show the true names and capacities of these fictitiously named Defendants.

4. Unless otherwise alleged in this complaint, Plaintiff is informed and believes, and on the basis of that information and belief alleges that at all times herein mentioned, each of the remaining co-Defendants, in doing the things hereinafter alleged, was acting within the course, scope and under the authority of his/her/its agency, employment, or representative capacity, with the consent of her/his/its co-Defendants.

5. At all times herein mentioned, Plaintiff was and is an individual who suffers from a physical disability. Specifically, Plaintiff suffers from diabetes, a serious health condition which significantly limits the functionality of the endocrine system.

6. In or around December 2016, Plaintiff was hired by Defendant as a Class A Driver.

7. As a Class A Driver for Defendant, Plaintiff is informed and believes that the essential functions of his position were driving and delivering food items to Defendant's customers.

8. In or around February 2020, Plaintiff began experiencing respiratory symptoms and was thereafter diagnosed with pneumonia. Due to Plaintiff's disability, Plaintiff had a high risk of developing complications as a result of pneumonia. As a result of Plaintiff's pneumonia, Plaintiff was hospitalized.

9. In an effort to recover from the pneumonia which worsened due to Plaintiff's diabetes, Plaintiff was placed on medical leave by his physician for sixteen days. Plaintiff provided doctor's notes to his employer confirming the same.

10. Although Plaintiff subsequently recovered from pneumonia, Plaintiff's physician extended Plaintiff's medical leave to September 2020 as a result of Plaintiff's disability, specifically Plaintiff's diabetes, and Plaintiff's status as "high risk" in the climate of the COVID-

19 pandemic. While COVID-19 can be deadly to any individual, it poses unique and heightened risks to individuals with disabilities.

11. According to the U.S. Centers for Disease Control and Prevention (CDC), certain groups are considered particularly vulnerable and placed at a higher risk for severe illness from COVID-19. These include individuals: who are 65 years and older, who have chronic lung disease or moderate to severe asthma, who are immunocompromised, with severe obesity, **_with diabetes,_** with chronic kidney disease undergoing dialysis, and with liver disease. CDC, *People Who Are at Higher Risk for Severe Illness*, available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

12. On or about August 25, 2020, Defendant requested updated paperwork from Plaintiff's physician regarding Plaintiff's disability and medical leave.

13. Plaintiff complied with Defendant's request on or about September 2, 2020 with completed paperwork from Plaintiff's physician informing Defendant of Plaintiff's ability to return to work with a temporary accommodation of minimizing contact with people for six to twelve months.

14. Plaintiff is informed and believes that he was able to perform all the essential functions of his Class A Driver position, including driving and delivering shipments to customer locations, with or without reasonable accommodation. Based on Plaintiff's disability and high-risk status during the COVID-19 pandemic, Plaintiff requested to return to work with a temporary reasonable accommodation of minimizing contact with people for six to twelve months per his physician's orders.

15. Upon receipt of Plaintiff's request for accommodation, Defendant scheduled a meeting with Plaintiff on or about September 8, 2020.

16. On or about September 8, 2020, Plaintiff met with Defendant to discuss his requests for accommodation and return to work. Specifically, Plaintiff met with Defendant's agents Remy Sablan of Defendant's human resources department, Bryant Keith and Arturo Cortez.

17. During this meeting, Plaintiff proposed a transition to a position within Defendant's warehouse to accommodate Plaintiff's disability and request for minimal contact with other persons. Defendant's agents denied Plaintiff's request and failed to offer any other options to attempt to accommodate Plaintiff's disability and simply ended the meeting. As such, Defendants failed to participate in good faith during the "interactive process."

18. Accommodations could have been made for Plaintiff such as placement in a warehouse position, policies regarding minimal contact or contactless delivery measures or assignment to a driving route such as a "key drop" or long-haul route which involves limited to no interaction with customers.

19. Plaintiff is informed and believes and based thereon alleges that Defendant operated a long-haul route between the Gilroy area and Los Angeles. This route involves little if any customer contact and was not regularly assigned to any particular driver. Defendant's agents were aware of this position and failed to offer it to Plaintiff despite its availability.

20. Rather than make any attempt to accommodate Plaintiff, Plaintiff was terminated by Defendants on or about September 18, 2020 due to his disability and in retaliation for his request for an accommodation of his disability.

21. Specifically, Defendant's agent "Remy Sablan" informed Plaintiff via letter that Plaintiff was being terminated following the September 8th meeting because there was allegedly "no reasonable accommodation that PFG can provide" for Plaintiff's "permanent work restrictions" and thereafter provided Plaintiff with paperwork stating his employment ended due to "voluntary quit effective 9/18/2020."

22. Plaintiff is informed and believes that Defendant's stated reason for termination and attempt to classify Plaintiff's termination as voluntary was pretextual based on (1) Defendant's sole reason for Plaintiff's termination is related to his disability and nothing else, (2) Plaintiff and his physician made repeated assertions that Plaintiff's requested accommodations were <u>temporary, not permanent as suggested by Mr. Sablan</u>, (3) Plaintiff was informed of and believes Defendant had open driving and warehouse positions that could have accommodated Plaintiff's disability, and (4) Plaintiff excelled in his position for nearly four years when he was

terminated almost immediately in response to his request to return to work with reasonable accommodations of his disability.

23. The temporal proximity between the "accommodation" meeting and Plaintiff's termination together with nearly four years of excellent work performance and termination immediately following Plaintiff's participation in a protected activity, specifically Plaintiff's request to return to work with reasonable accommodation of his disability, is sufficient to establish pretext. *See Arteaga v. Brink's, Inc.,* 163 Cal. App. 4th 327, 353 (2d Dist. 2008); *Shirley v. Chrysler First, Inc.* (5th Cir.1992) 970 F.2d 39, 42–44; *Moss v. Bluecross, Blue Shield of Kansas, Inc.* (D.Kan.2008) 534 F.Supp.2d 1190, 1202–1204.)

24. Plaintiff is therefore informed and believes that Plaintiff's disability was a substantial motivating factor in Defendant's decision to terminate Plaintiff. Plaintiff is further informed that Plaintiff's termination was in retaliation for his requests for accommodation of his disability.

25. As a result of being subjected to discrimination, retaliation and termination of employment by Defendant due to Plaintiff's disability, Plaintiff suffered emotional distress and medical expenses. Further, as a result of all of the foregoing and following actions taken towards Plaintiff as alleged herein, Plaintiff has incurred loss of earnings and benefits in an amount not yet ascertained.

26. All of the foregoing and following actions taken towards the Plaintiff as alleged herein were carried out by Defendant and Defendant's agent Remy Sablan in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage the Plaintiff.

27. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff has suffered and continues to suffer from losses of earnings and otherwise in amounts as yet unascertained but subject to proof at trial.

/ / /

/ / /

/ / /

First Cause of Action

**DISABILITY DISCRIMINATION**

28. Plaintiff re-alleges the information set forth in Paragraphs 1-27 as though fully set forth and alleged herein.

29. This cause of action is based upon *Government Code* section 12926(m), which defines physical disability as having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, *respiratory*, including speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin *and endocrine*, and the disability limits an individual's ability to participate in major life activities. This cause of action is also based upon *Government Code* section 12940 for discriminating against Plaintiff on the basis of physical disability.

30. Plaintiff's disability (actual and/or perceived), specifically diabetes, constituted a disability as defined above in *Government Code* §12926(m).

31. Defendants are an "employer" as defined by and subject to *Government Code* section 12900, et al.

32. Plaintiff has exhausted his administrative remedies under the California Fair Employment and Housing Act by filing charges that Defendant violated the California Fair Employment and Housing Act and was issued the Notice of Case Closure/Right-to-Sue Letter granting Plaintiff the right to bring suit against Defendant.

33. Defendant was aware that Plaintiff was disabled or at least perceived that he was disabled.

34. Plaintiff is informed and believes that he was able to perform all the essential functions of his Class A Driver position, namely driving and delivering customer orders, with or without reasonable accommodation. This is supported by Plaintiff's excellent work performance for nearly four years.

35. Because Plaintiff suffered actual and perceived physical disabilities including diabetes and was high risk during the COVID-19 pandemic, Plaintiff requested to return to work

from medical leave with the reasonable accommodation of minimizing his contact with people in an effort to limit potential exposure to the COVID-19 virus.

36. Reasonable accommodations could have been made for Plaintiff's disability, such as placement in a warehouse position, policies regarding minimal contact or contactless delivery measures or assignment to a driving route such as a "key drop" or long-haul route which involves limited to no interaction with customers, but were not provided.

37. As described in further detail above, Defendant discriminated against Plaintiff in violation of the *Government Code* sections set forth herein by terminating Plaintiff's employment because of his disability (actual and/or perceived) and his status as a high-risk person during the COVID-19 pandemic when Plaintiff attempted to return from medical leave.

38. As a direct, foreseeable, and proximate result of the conduct of Defendant, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendants, plus expenses incurred in obtaining substitute employment and not being regularly employed all to his damage in a sum within the jurisdiction of this court, to be ascertained according to proof.

39. The grossly reckless, careless, negligent, oppressive and/or intentional, malicious, and bad faith manner in which said Defendant and Defendant's agents, including but not limited to Remy Sablan, engaged in those acts as described in this cause of action entitle Plaintiff to punitive damages against said Defendants in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish said Defendants, deter them from engaging in such conduct again, and to make an example of them to others.

40. Plaintiff is informed and believes and based thereon alleges that the punitive conduct of said Defendants was ratified by those other individuals who were managing agents of said Defendants including but not limited to Remy Sablan who personally denied Plaintiff's accommodation requests and thereafter terminated Plaintiff in response to his request to return to work with temporary accommodations. These unlawful acts were further ratified by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose

of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages in this cause of action in a sum to be determined at the time of trial.

41.     Plaintiff also prays for reasonable costs and attorney fees against said Defendants, as allowed by California Government Code §12965 and any other applicable statutes for Plaintiff's prosecution of this action in reference to the time Plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

Second Cause of Action

**FAILURE TO ACCOMMODATE**

42.     Plaintiff re-alleges the information set forth in Paragraphs 1-41 as though fully set forth and alleged herein.

43.      *Government Code* section 12940, subdivision (m), provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

44.     *Government Code* section 12926, subdivision (p) provides: "'Reasonable accommodation' may include either of the following: (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. (2) Job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, *adjustment or modifications of examinations, training materials or policies*, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."

45.     *California Code of Regulations*, title 2, section 11068, subdivision (a), provides that "[a]n employer or other covered entity has an *affirmative duty* to make reasonable accommodation(s) for the disability of any individual applicant or employee *if the employer or other covered entity knows of the disability*, unless the employer or other covered entity can demonstrate, after engaging in the interactive process, that the accommodation would impose an undue hardship." (Italics added.)

46. Employers have an affirmative duty to make reasonable accommodation(s) for an employee if it knows of an employee's disability, even if the employee does not request an accommodation. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 949-50.)

47. *California Code of Regulations*, title 2, section 11068, subdivision (e), further provides that an employer "is required to consider any and all reasonable accommodations of which it is aware, or which are brought to its attention by the applicant or employee, except ones that create an undue hardship. The employer or other covered entity shall consider the preference of the applicant or employee to be accommodated but has the right to select and implement an accommodation that is effective for both the employee and the employer or other covered entity."

48. Plaintiff has exhausted his administrative remedies under the California Fair Employment and Housing Act by filing charges that Defendants discriminated against him and his employment and violated the California Fair Employment and Housing Act and has received a Right to Sue Letter.

49. Plaintiff's disability (actual and/or perceived), specifically his diabetes, constituted a disability as defined above in *Government Code* §12926(m).

50. Defendants are an "employer" as defined by and subject to *Government Code* section 12900, et al.

51. Plaintiff is informed and believes and on that basis alleges that Defendants were aware of Plaintiff's disability (actual and/or perceived) as described above.

52. Plaintiff was able to perform all the essential functions of his Class A Driver position, namely driving and delivering customer orders, with or without reasonable accommodation.

53. Because Plaintiff suffered actual and perceived physical disabilities including diabetes and was high risk during the COVID-19 pandemic, Plaintiff requested to return to work with the reasonable accommodation of minimizing his contact with people.

54. Reasonable accommodations could have been made for Plaintiff's physical disability, such as placement in a warehouse position, policies regarding minimal contact or

contactless delivery measures or assignment to a driving route such as a "key drop" or long-haul route which involves limited to no interaction with customers, but were not provided.

55. Plaintiff is informed and believes and based thereon alleges that Defendant operated a long-haul route between the Gilroy area and Los Angeles. This route involves little if any customer contact and was not regularly assigned to any particular driver. Defendant's agents were aware of this position and failed to offer it to Plaintiff despite its availability and the perfect fit between the route's characteristics and Plaintiff's medical needs.

56. Defendant failed to reasonably accommodate Plaintiff's disability where (1) Defendant did not permit Plaintiff to return to his Class A Driver position with reasonable accommodations such as "key drop" assignments as described above, (2) Defendant did not transfer Plaintiff to an open long-haul driving position with limited to no customer contact, and (3) Defendant did not transfer Plaintiff to an open warehouse position where social distancing measures were in place. Rather than temporarily accommodate Plaintiff's disability as described herein or in any other method Defendant could have proposed, Defendant terminated Plaintiff's employment.

57. As a result of being subjected to Defendant's failure to accommodate and termination of employment in retaliation for Plaintiff's requests for accommodation, Plaintiff suffered emotional distress. Further, as a result of all of the foregoing and following actions taken towards Plaintiff as alleged herein, Plaintiff has incurred loss of earnings and benefits in an amount not yet ascertained.

58. As a direct, foreseeable, and proximate result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendants, plus expenses incurred in obtaining substitute employment and not being regularly employed all to his damage in a sum within the jurisdiction of this court, to be ascertained according to proof.

59. The grossly reckless, careless, negligent, oppressive and/or intentional, malicious, and bad faith manner in which said Defendant and Defendant's agents, including but not limited to Remy Sablan, engaged in those acts as described in this cause of action entitle Plaintiff to

punitive damages against said Defendants in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish said Defendants, deter them from engaging in such conduct again, and to make an example of them to others.  Plaintiff is informed and believes and based thereon alleges that the punitive conduct of said Defendants was ratified by those other individuals who were managing agents of said Defendants including but not limited to Remy Sablan who terminated Plaintiff in response to his request to return to work with temporary accommodations.  These unlawful acts were further ratified by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages in this cause of action in a sum to be determined at the time of trial.

60. Plaintiff also prays for reasonable costs and attorney fees against said Defendants, as allowed by California Government Code §12965 and any other applicable statutes for Plaintiff's prosecution of this action in reference to the time Plaintiff's attorney spends pursuing this cause of action as well as any other applicable statutes.

### Third Cause of Action

### FAILURE TO ENGAGE IN THE GOOD FAITH INTERACTIVE PROCESS

61. Plaintiff re-alleges the information set forth in Paragraphs 1-60 as though fully set forth at length.

62. *California Code of Regulations*, title 2, section 11068, subdivision (a), provides that "[a]n employer or other covered entity has an affirmative duty to make reasonable accommodation(s) for the disability of any individual applicant or employee if the employer or other covered entity knows of the disability, unless the employer or other covered entity can demonstrate, *after engaging in the interactive process*, that the accommodation would impose an undue hardship." (Italics added.)

63. *California Code of Regulations*, title 2, section 11069, subdivision (a) provides, in pertinent part, that "[w]hen needed to identify or implement an effective, reasonable accommodation for an employee or applicant with a disability, the FEHA requires a timely, good faith, interactive process between an employer or other covered entity and an applicant,

employee, or the individual's representative, with a known physical or mental disability or medical condition."

64. The FEHA makes it an unlawful employment practice to fail to engage in a timely, good faith, interactive process with an employee and/or the employee's physician to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee with a known physical or mental disability or medical condition. (*Gov. Code*, § 12940, subd. (n).)

65. To satisfy the "good faith" element, employers should "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, <u>show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome</u>." *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 317 (3d Cir.1999) (Emphasis added).

66. Plaintiff's disability (actual and/or perceived), specifically his diabetes, constituted a disability as defined above in Government Code §12926(m).

67. Defendant is an "employer" as defined by and subject to Government Code section 12900, et al.

68. Plaintiff is informed and believes and on that basis alleges that Defendants were aware of Plaintiff's disability (actual and/or perceived) as described above and based on doctor's notes, medical leave requests and/or the certification provided to Defendant by Plaintiff and/or Plaintiff's physician.

69. Plaintiff is informed and believed that he was able to perform all the essential functions of his Class A Driver position, namely driving and delivering customer orders, with or without reasonable accommodation.

70. Because Plaintiff suffered actual and perceived physical disabilities including diabetes and was high risk during the COVID-19 pandemic, Plaintiff requested to return to work with the reasonable temporary accommodation of minimizing his contact with people.

71. Reasonable accommodations could have been made for Plaintiff's physical disability, such as placement in a warehouse position, policies regarding minimal contact or contactless delivery measures or assignment to a driving route such as a "key drop" or long-haul route which involves limited to no interaction with customers, but were not provided.

72. On or about September 8, 2020, Plaintiff met with Defendant to discuss his requests for accommodation and return to work. Specifically, Plaintiff met with Defendant's agents Remy Sablan, Bryant Keith and Arturo Cortez.

73. During this meeting, Plaintiff proposed a transition to a position within Defendant's warehouse to accommodate Plaintiff's disability and request for minimal contact with other persons. <u>Defendant denied Plaintiff's request and failed to offer any other options to accommodate Plaintiff's disability and simply ended the meeting</u>. As such, Defendant failed to participate in good faith during the interactive process and simply terminated Plaintiff's employment eight days later.

74. As alleged herein and in violation of California Government Code section 12940(n), Defendant violated the California Fair Employment and Housing Act by, among other things, refusing and/or failing to engage in a timely, good faith, interactive process with Plaintiff regarding his work restrictions and disabilities.

75. As a direct and proximate result of Defendant's willful, knowing, and intentional failure to engage in the interactive process, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

76. As a direct, foreseeable, and proximate result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendants, plus expenses incurred in obtaining substitute employment and not being regularly employed all to her damage in a sum within the jurisdiction of this court, to be ascertained according to proof.

77. The grossly reckless, careless, negligent, oppressive and/or intentional, malicious, and bad faith manner in which said Defendant and Defendant's agents, including but not limited to Remy Sablan, engaged in those acts as described in this cause of action entitle Plaintiff to

punitive damages against said Defendants in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish said Defendants, deter them from engaging in such conduct again, and to make an example of them to others.  Plaintiff is informed and believes and based thereon alleges that the punitive conduct of said Defendants was ratified by those other individuals who were managing agents of said Defendants including but not limited to Remy Sablan who terminated Plaintiff in response to his request to return to work with temporary accommodations.  These unlawful acts were further ratified by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages in this cause of action in a sum to be determined at the time of trial.

<u>Fourth Cause of Action</u>

**RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT**

78. Plaintiff re-alleges the information set forth in Paragraphs 1-77 as though fully set forth and alleged herein.

79. This cause of action is based upon *California Government Code Section 12940, et seq.* which prohibits employers from retaliating against employees who make a request for accommodation for their disabilities and who complain of a lack of accommodation for their disabilities; and prohibits employers from retaliating against employees who complain of disability discrimination.

80. *Government Code* section 12940, subdivision (h), prohibits covered employers and/or persons from retaliating against employees <u>for exercising any right under the FEHA</u>.

81. Defendant violated *California Government Code Section 12940, et seq.* by doing the following acts all because of Plaintiff's disability and requests for accommodation, including but not limited to, terminating Plaintiff due to his disability, his status as high risk during the COVID-19 pandemic and in response to his requests for accommodation of his disability as described in the general allegations above.

82. Plaintiff has exhausted his administrative remedies under the California Fair Employment and Housing Act by filing charges that Defendants discriminated and retaliated

against her and her employment and violated the California Fair Employment and Housing Act and has received a Right to Sue Letter.

83. As a direct and proximate result of Defendant's willful, knowing, and intentional, retaliation, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

84. As a direct, foreseeable, and proximate result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendants, plus expenses incurred in obtaining substitute employment and not being regularly employed all to his damage in a sum within the jurisdiction of this court, to be ascertained according to proof.

85. The grossly reckless, careless, negligent, oppressive and/or intentional, malicious, and bad faith manner in which said Defendant and Defendant's agents, including but not limited to Remy Sablan, engaged in those acts as described in this cause of action entitle Plaintiff to punitive damages against said Defendants in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish said Defendants, deter them from engaging in such conduct again, and to make an example of them to others.  Plaintiff is informed and believes and based thereon alleges that the punitive conduct of said Defendants was ratified by those other individuals who were managing agents of said Defendants including but not limited to Remy Sablan who terminated Plaintiff in response to his request to return to work with temporary accommodations.  These unlawful acts were further ratified by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages in this cause of action in a sum to be determined at the time of trial.

86. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and with a reckless and conscious disregard of Plaintiffs' rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and

1  each of them. Plaintiff is thus entitled to recover punitive and exemplary damages from
2  Defendants, and each of them, for these wanton, obnoxious, and despicable acts as allowed by
3  law, that will sufficiently punish, make an example of, and deter future conduct by Defendants.

Fifth Cause of Action

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

87. Plaintiff re-alleges the information set forth in Paragraphs 1-86 above and by this reference incorporates said paragraphs herein as though fully set forth at length.

88. Plaintiff's employment was wrongfully terminated, in violation of substantial and fundamental public policies of the State of California that inures to the benefit of the public, with respect to retaliation, tortious discharge, and adverse employment actions taken against Plaintiff for complaining of labor code violations, all in violation of various state statutes including but not limited to violations of California's Constitution and the Fair Employment and Housing Act.

89. As a result of their employment relationship, Defendant was obligated to restrain from discharging Plaintiff for reasons which violate or circumvent said policy, law, or the objectives that underlie each and not to compound their illegal conduct by discriminating against and retaliating against Plaintiff.

90. Defendant's act of discriminating against Plaintiff on the basis of his disability by terminating his employment and retaliating against Plaintiff in response to his requests for accommodation of his disability by terminating Plaintiff constitutes wrongful termination in violation of public policy.

91. As a direct and proximate result of Defendant's willful, knowing, and intentional failure to engage in the interactive process, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

92. As a direct, foreseeable, and proximate result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendants, plus expenses incurred in obtaining substitute employment and not being regularly employed all to his damage in a sum within the jurisdiction of this court, to be ascertained according to proof.

93. The grossly reckless, careless, negligent, oppressive and/or intentional, malicious, and bad faith manner in which said Defendant and Defendant's agents, including but not limited to Remy Sablan, engaged in those acts as described in this cause of action entitle Plaintiff to punitive damages against said Defendants in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish said Defendants, deter them from engaging in such conduct again, and to make an example of them to others. Plaintiff is informed and believes and based thereon alleges that the punitive conduct of said Defendants was ratified by those other individuals who were managing agents of said Defendants including but not limited to Remy Sablan who terminated Plaintiff following his request to return to work with temporary accommodations. These unlawful acts were further ratified by Defendants and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages in this cause of action in a sum to be determined at the time of trial.

94. As a result of Defendant's retaliatory or other illegal and prohibited acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

95. The damages herein exceed $25,000.00.

96. Plaintiff requests a jury trial.

WHEREFORE, Plaintiff prays for the following relief:

1. For special damages in an amount according to proof for Plaintiff's loss of past and future earnings, loss of benefits, loss of bonuses, expenses to obtain new employment, loss of job security and all damages flowing therefrom;
2. For all general and special damages to compensate Plaintiff for any past and future medical expenses and suffering and related damages;
3. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;
4. For all penalties under all relevant statutes;
5. For all costs and disbursements incurred in this suit;

6. For all interest as allowed by law;

7. For attorney's fees and costs; and

8. For such other and further relief as the Court deems just and proper.

DATED: April 19, 2021                                          ABRAMSON LABOR GROUP


By:___/s/ Christina Begakis____
Christina Begakis, Esq.
Attorneys for Plaintiff
JORGE MADRIGAL