UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JORGE MADRIGAL,<br>    Plaintiff,<br>    v.<br>PERFORMANCE TRANSPORTATION, LLC,<br>    Defendant. | Case No. 21-cv-00021-VKD<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 31 |

With the Court's leave, on April 19, 2021, plaintiff Jorge Madrigal filed his first amended complaint ("FAC") against defendant Performance Transportation, LLC ("PTL"). Dkt. No. 30. He asserts the following claims under the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.*: (1) disability discrimination in violation of FEHA, Cal. Gov't Code §§ 12926(m) and 12940(a); (2) failure to accommodate Mr. Madrigal's disability in violation of FEHA, Cal. Gov't Code §§ 12926(p) and 12940(m); (3) failure to engage in a good faith interactive process in violation of FEHA, Cal. Gov't Code § 12940(n); and (4) retaliation in violation of FEHA, Cal. Gov't Code § 12940(m)(2). Dkt. No. 30 at 6–16. Mr. Madrigal also asserts a claim for wrongful termination in violation of public policy. Dkt. No. 30 at 16–17.

PTL moves to dismiss all claims in Mr. Madrigal's FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 31. PTL's motion is suitable for decision on the papers without oral argument. Civil L.R. 7-1(b). Having considered the parties' submissions, the Court denies PTL's motion to dismiss.

## I. BACKGROUND[1]

Mr. Madrigal, who has diabetes, began working for PTL as a Class A Driver in December 2016. Dkt. No. 30 ¶¶ 5-6. As a Class A Driver, the essential functions of his position were driving and delivering food items to PTL's customers. *Id.* ¶ 7. For nearly four years, he excelled in his position. *Id.* ¶ 22.

In February 2020, Mr. Madrigal began experiencing respiratory symptoms. He was diagnosed with pneumonia and hospitalized. *Id.* ¶ 8. Because of his underlying condition of diabetes, Mr. Madrigal had a high risk of developing complications from his pneumonia. *Id.* Mr. Madrigal's physician placed him on medical leave from work for 16 days to allow Mr. Madrigal to recover from his pneumonia. *Id.* ¶ 9. Mr. Madrigal provided PTL with documentation from his physician to support his medical leave. *Id.*

Although Mr. Madrigal recovered from pneumonia, his physician extended Mr. Madrigal's medical leave to September 2020 because his diabetes put him at high risk for severe illness from COVID-19, which was then a global pandemic. *Id.* ¶¶ 10-11.

On or about August 25, 2020, PTL requested additional documentation regarding Mr. Madrigal's disability and medical leave. *Id.* ¶ 12. Mr. Madrigal provided PTL with documentation from his physician indicating that Mr. Madrigal could return to work so long as he minimized contact with other people for six to 12 months due to his high-risk status during the COVID-19 pandemic. *Id.* ¶ 13. Thereafter, Mr. Madrigal asked PTL for a temporary accommodation of minimized contact with other people for six to 12 months, in accordance with his physician's direction. *Id.* ¶ 14. Mr. Madrigal alleges that he could perform all the essential functions of his Class A Driver position (i.e., driving and delivering food items to PTL's customers) with or without this accommodation. *Id.*

After receiving Mr. Madrigal's request for an accommodation, PTL scheduled a meeting with Mr. Madrigal on September 8, 2020. *Id.* ¶ 15. On that day, Mr. Madrigal met with three PTL employees, one of whom worked in PTL's human resources department. *Id.* ¶ 16. During this

---

[1] Unless otherwise noted, the following factual allegations are taken from the FAC, and they are accepted as true for the purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

meeting, Mr. Madrigal proposed that he work in PTL's warehouse to minimize contact with other persons. *Id.* ¶ 17. PTL denied this request, ending the meeting without offering any other options to accommodate Mr. Madrigal's request for minimized contact. *Id.* According to Mr. Madrigal, other accommodation options existed beyond placement in the warehouse. For example, PTL could have instituted contactless delivery measures or assigned Mr. Madrigal to a long-haul route involving limited to no interaction with customers. *Id.* ¶ 18. Mr. Madrigal alleges that PTL operated a long-haul route between Gilroy, California, and Los Angeles involving little (if any) customer contact, and that this route was not regularly assigned to a specific driver. *Id.* ¶ 19.

Ten days after Mr. Madrigal requested an accommodation, PTL fired Mr. Madrigal. *Id.* ¶¶ 20, 21. In a letter, PTL advised Mr. Madrigal that he had been terminated because there was "no reasonable accommodation" available for Mr. Madrigal's "permanent work restrictions." *Id.* ¶ 21.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a court may not generally consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). These sources include public records, but a court may not take note of disputed facts stated in such records. *Lee v. City*

3

*of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

**III. MOTION TO DISMISS**

PTL argues that the FAC does not plead facts sufficient to state claims for disability discrimination, failure to accommodate, failure to participate in a good-faith interactive process, retaliation, and wrongful termination. Dkt. No. 31. The Court addresses each claim in turn.

**A. Disability Discrimination (FEHA, Cal. Gov't Code §§ 12969(m) and 12940)**

To state a claim for disability discrimination under FEHA, Mr. Madrigal must allege that he: (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability. *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 797 (N.D. Cal. 2015) (citing *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 159–60 (2011)). For the reasons explained below, the Court concludes that Mr. Madrigal states a claim for disability discrimination under FEHA.

**1. Qualifying disability**

In his original complaint, Mr. Madrigal alleged that he was diagnosed with pneumonia in February 2020, which he described as a disability affecting his ability to breathe. Dkt. No. 1-1 ¶ 7. At the March 30, 2021 hearing on PTL's first motion to dismiss, Mr. Madrigal's counsel explained that Mr. Madrigal's qualifying disability is pneumonia and associated respiratory conditions that put him at high risk for serious illness from COVID-19. Dkt. No. 28. In its order dismissing Mr. Madrigal's original complaint, this Court observed that it was unclear whether Mr. Madrigal contends that he is disabled because he had pneumonia or because he had pneumonia during the COVID-19 pandemic and so was particularly vulnerable to serious illness or death. Dkt. No. 29 at 5. This Court directed Mr. Madrigal to clarify the nature of his qualifying disability in an amended pleading. *Id.*

Mr. Madrigal now alleges that his underlying disability is diabetes and that this disease puts him at high risk for serious illness during the COVID-19 pandemic. Dkt. No. 30 ¶¶ 5, 10, 11. While he was hospitalized and placed on medical leave due to contracting pneumonia in early 2020, Mr. Madrigal's physician extended his medical leave to September 2020 because, having

4

recovered from pneumonia, he remained at high risk for serious illness during the COVID-19 pandemic due to his diabetes. *Id.* ¶¶ 8-10.

Mr. Madrigal has pled a qualifying disability under the FEHA. Diabetes is a physiological disease that affects the endocrine system. *See* Cal. Gov't Code § 12926(m)(1)(A); Cal. Code Regs. title 2, § 11065(d)(2)(C) (listing "diabetes" as a disability). It is by now well-accepted that having diabetes also increases the risk of serious illness or death from COVID-19, a disease that affects the respiratory system as well as other body systems. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having either type 1 or type 2 diabetes **can make you more likely** to get severely ill from COVID-19.") (emphasis in original); *Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, Centers for Disease Control and Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (for patients with COVID-19, diabetes is associated with a 20% increased chance of in-hospital mortality); *see also, e.g.*, *Valentine v. Collier,* No. 4:20-CV-1115, 2020 WL 3625730 (S.D. Tex. Jul. 2, 2020) (plaintiffs successfully pled failure-to-accommodate under the ADA where they had alleged that defendants knew about plaintiffs' heightened risk for serious illness or death upon contracting COVID-19 because of their disabilities). PTL contends that "being at heightened risk for COVID-19 is not, by itself, a disability under FEHA," Dkt. No. 31 at 6 n.2, citing guidance from the California Department of Fair Employment and Housing ("DFEH") stating: "[I]f the underlying medical condition [putting the employee at increased risk for severe illness from COVID-19] does not rise to the level of a disability, employers are not required to reasonably accommodate the employee." *DFEH Employment Information on COVID-19 FAQ*, Department of Fair Employment and Housing, at 6 (March 14, 2021), https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2020/03/DFEH-Employment-Information-on-COVID-19-FAQ_ENG.pdf. This guidance is not dispositive, however, and even if the Court adopted the guidance, it would not apply here because Mr. Madrigal *does* allege an underlying medical condition (i.e., diabetes) that is itself a qualifying disability.

### 2. Qualified individual

In its order of dismissal, the Court found that Mr. Madrigal had not alleged the essential duties of his position or that he was able to perform those duties with or without reasonable accommodation. Dkt. No. 29 at 6. In the FAC, Mr. Madrigal now alleges that "the essential functions of his position were driving and delivering food items to Defendant's customers." Dkt. No. 30 ¶ 7. Further, he alleges that "he was able to perform all the essential functions of his Class A Driver position, including driving and delivering shipments to customer locations, with or without reasonable accommodation." *Id.* ¶ 14.

PTL argues that these allegations are insufficient because Mr. Madrigal fails to "explain[] how he could possibly perform the essential function of 'delivering food items to [PTL's] customers' (FAC, ¶ 7) if his work restrictions allegedly required him to severely limit or completely eliminate contact with PTL's customers." Dkt. No. 31 at 8. The Court disagrees. Mr. Madrigal alleges that PTL could have implemented "policies regarding minimal contact or contactless delivery measures" to accommodate his disability. Dkt. No. 30 ¶ 18. Construing Mr. the allegations in the light most favorable to Mr. Madrigal, the Court concludes that his allegations regarding the availability of limited-contact or contactless delivery procedures, in addition to his other allegations, are sufficient to meet PTL's objections.

### 3. Substantial motivating factor

Mr. Madrigal must plead facts sufficient to show that he "was subjected to an adverse employment action because of the disability or perceived disability," and that his disability was a "substantial motivating factor" in the particular employment decision. *Achal*, 114 F. Supp. 3d at 797 (internal quotes omitted).

In the FAC, Mr. Madrigal alleges that he advised PTL of his need for an extended medical leave due to his diabetes and his status as high risk during the COVID-19 pandemic. Dkt. No. 30 ¶ 10. He further alleges that he provided documentation from his physician in support of his extended medical leave and his request for a temporary accommodation. *Id.* ¶¶ 12-13. He then alleges that PTL terminated him within ten days of the parties' meeting regarding his request for an accommodation, emphasizing the "temporal proximity" between his meeting with human

resources on September 8, 2020, at which he made his reasonable accommodation request and his termination on September 18, 2020. *Id.* ¶¶ 20, 23. In addition, Mr. Madrigal alleges that PTL informed him, that he was being terminated because there was "no reasonable accommodation" that could be provided for his "permanent work restrictions." *Id.* ¶ 21.

The Court finds that these allegations plausibly support Mr. Madrigal's claim that PTL was aware of his disability and the enhanced risk he faced as a result of that disability during the COVID-19 pandemic, and that his disability and resulting request for accommodation was a substantial motivating factor in PTL's decision to terminate him.

### B. Failure to Accommodate (FEHA, Cal. Gov't Code §§ 12926(m) and 12940)

To state a claim for failure to provide reasonable accommodation, Mr. Madrigal must allege that he suffers from a physical or mental disability, that he is a qualified individual, and that PTL failed to reasonably accommodate his disability. *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 911 (N.D. Cal. 2015) (citing *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (Cal. Ct. App. 2000)). "Reasonable accommodation" means a "modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired." *Achal*, 114 F. Supp. 3d at 789–99 (quoting *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014)) (internal quotation marks omitted); *see also* Cal. Gov't Code § 12926(p).

In its order dismissing his original complaint, the Court found that Mr. Madrigal had not sufficiently alleged a qualifying disability or that he is a qualified individual under FEHA. Dkt. No. 29 at 8. As discussed above, *see supra* Section III.A.1-2, the FAC remedies these deficiencies. In addition, Mr. Madrigal alleges that he made a reasonable request for a temporary accommodation, that PTL denied his request without offering any other options, and that PTL made no effort at all to accommodate his disability. Dkt. No. 30 ¶ 17.

The Court finds that Mr. Madrigal has stated a claim for failure-to-accommodate under FEHA.

### C. Good-Faith Interactive Process (FEHA, Cal. Gov't Code § 12940(n))

To state a claim for failure to engage in an interactive process under FEHA, a plaintiff must plead that his employer failed "to engage in a timely, good faith, interactive process with the

7

employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "So long as the employee is disabled and qualified to perform his job duties, the employer has an affirmative duty to explore further methods of accommodation before terminating [the employee]." *Alejandro*, 129 F. Supp. 3d at 912 (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2015)) (internal quotation marks omitted). An employer may be held liable only if it was responsible for the breakdown of the interactive process. *Nadaf-Rahrov*, 166 Cal. App. 4th at 985.

Here, Mr. Madrigal alleges that in response to his request for an accommodation, PTL scheduled a meeting with him, at which Mr. Madrigal proposed his reassignment to a warehouse position and requested minimal contact with other persons. Dkt. No. 30 ¶¶ 15–17. He continues that at this meeting, PTL denied his request and "failed to offer any other options to attempt to accommodate Plaintiff's disability and simply ended the meeting." *Id.* ¶ 17. Mr. Madrigal describes several possible accommodations available, such as "contactless delivery measures" and an assignment to a long-haul route involving limited to no interaction with customers. *Id.* ¶ 18.

PTL argues that Mr. Madrigal's allegations are conclusory because it is "entirely unclear what, if any, positions were actually vacant and available to Plaintiff in the 'warehouse' that he was ostensibly qualified to perform." Dkt. No. 31 at 15. Further, PTL describes Mr. Madrigal's allegations about the implementation of contactless delivery measures and similar policies as "vague, ambiguous and confusing," and demands that Mr. Madrigal provide the factual basis for his conclusion that he could have been placed on a different driving route. *Id.* at 15. Finally, PTL insists that it did engage in a good-faith interactive process by providing Mr. Madrigal with a medical leave of absence and scheduling a meeting to discuss possible accommodations. *Id.* at 16.

PTL misunderstands Mr. Madrigal's burden at this stage. To prevail on a section 12940(n) claim, the employee must identify a reasonable accommodation that would have been available at the time of the interactive process, but "[p]laintiffs are not required to identify such a reasonable accommodation at the pleading stage," where "often employees do not have at their disposal the extensive information concerning possible alternative positions." *Achal*, 114 F. Supp. 3d at 800

(internal quotations omitted). Mr. Madrigal plausibly alleges several different accommodations available and this is sufficient for purposes of stating a claim for relief.

Further, PTL is mistaken in asserting that its initial provision of a medical leave of absence (in February 2020) and scheduling of a meeting upon receiving Mr. Madrigal's request for a reasonable accommodation (in August 2020) demonstrate engagement in a good-faith interactive process as a matter of law. Taking initial steps to identify reasonable accommodations will not absolve an employer of liability under section 12940(n); "[i]f the employer is responsible for a later breakdown in the process, it may be held liable." *Nadaf-Rahrov*, 166 Cal. App. 4th at 985–86. Here, Mr. Madrigal alleges that at the meeting, PTL "denied [his] request" and, without offering other options, "simply ended the meeting." Dkt. No. 30 ¶ 17.

The Court finds that Mr. Madrigal has stated a claim under FEHA for failure to engage in the interactive process.

### D. Retaliation (FEHA, Cal. Gov't Code § 12940 et seq.)

A claim for retaliation under FEHA requires that the plaintiff plead (1) engagement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (Cal. 2005). It is unlawful for an employer to retaliate against a person for requesting accommodation under FEHA. *Ruiz v. ParadigmWorks Grp., Inc.*, 787 F. App'x 384, 386 (9th Cir. 2019) (citing Cal. Gov't Code § 12940(m)(2)); *see also Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 245 (Cal. Ct. App. 2016).

In the FAC, Mr. Madrigal pleads a protected activity (his request for a reasonable accommodation) and an adverse employment action (his termination on September 18, 2020). Dkt. No. 30 ¶¶ 14, 16–17, 20–21. PTL argues that Mr. Madrigal fails to plead enough factual detail to support a causal link between the two events. Dkt. No. 31 at 13–14. The Court disagrees. An "employer's awareness of the protected activities and adverse action that followed within a relatively short time" is "sufficient to raise an inference of a causal connection." *Cal. Fair Emp. & Hous. Com.*, 122 Cal. App. 4th 1004, 1020 (Cal. Ct. App. 2004). Mr. Madrigal alleges that he was terminated ten days after he met with human resources to request a reasonable accommodation for his disability. Dkt. No. 30 ¶¶ 16, 20, 22.

9

The Court finds that these allegations plausibly support Mr. Madrigal's claim that his disability was a substantial motivating factor in the decision to terminate him, *see supra* Section III.A.3, the Court finds that these allegations plausibly support Mr. Madrigal's claim that he was terminated in retaliation for his reasonable-accommodation request.

### E. Wrongful Termination

Discrimination under FEHA can support a claim for wrongful termination in violation of public policy in California. *Alejandro*, 129 F. Supp. 3d at 915 (citing *Stevenson v. Super. Ct.*, 16 Cal. 4th 880, 897 (1997); *Rojo v. Kliger*, 52 Cal. 3d 65, 89–91 (1990); *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 214 (2011)). A claim for wrongful termination must allege (1) an employee-employer relationship; a termination that (2) violated public policy and (3) was the legal cause of damages; and (4) the amount and nature of those damages. *Ali v. Robert Half Int'l, Inc.*, 19-CV-00509 NC, 2019 WL 4933573, at *6 (N.D. Cal. Oct. 7, 2019), *aff'd*, 796 F. App'x 467 (9th Cir. 2020).

The Court dismissed Mr. Madrigal's wrongful termination claim in his original complaint because it was derived from his disability discrimination and retaliation claims under FEHA, which he had not adequately pled. Dkt. No. 29 at 10. The Court now finds that the FAC states claims for disability discrimination and retaliation under FEHA. *See supra* Sections III.A and III.D. Accordingly, because the Court finds that Mr. Madrigal has alleged an employee-employer relationship, Dkt. No. 30 ¶¶ 6–17, 12–113, 15–17, 20–21, and a termination that violated FEHA's public policy against disability discrimination, *id.* ¶¶ 20–21, 88–90, which was the legal cause of alleged damages exceeding $25,000, *id.* ¶¶ 91–92, 95, the Court find that Mr. Madrigal also states a claim for wrongful termination. *See Prue v. Brady Co./San Diego, Inc.*, Cal. App. 4th 1367, 1380 (Cal. Ct. App. 2015); *see also Alejandro*, 129 F. Supp. 3d at 915.

### IV. CONCLUSION

For the foregoing reasons, the Court denies PTL's motion to dismiss.

//

//

//

**IT IS SO ORDERED.**

Dated: July 7, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge